**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICO TITI, LLC, and HOLZER FAMILY OFFICE, LTD.,<br><br>　　　　　　*Plaintiffs*,<br><br>　-against-<br><br>AGORAI LIMITED, SYNDESIS HEALTH INC., SYNDESIS LLC, XEOMICS INC., SERAYA HEALTH INC., NEXA INC., NOETIC MACHINES INC., DATAFI INC., and JOSHUA DANIEL SUTTON,<br><br>　　　　　　*Defendants*. | Case No.:<br><br>**<u>COMPLAINT</u>** |

Plaintiffs Mico Titi LLC ("Mico Titi") and Holzer Family Office, LTD. ("HFO," and together with Mico Titi, "Plaintiffs"), by and through undersigned counsel, allege as follows:

**<u>Nature of the Action</u>**

1. This is an action arising from Defendants' multi-year failure to honor clear contractual and equity obligations owed to Plaintiffs, including the nonpayment of contractually required revenue share and monthly advances; the wrongful withholding and dilution of Plaintiffs' equity; the concealment of corporate records and governance changes; and the pursuit of merger and restructuring strategies designed to extinguish Plaintiffs' vested contractual and shareholder rights without assumption of obligations by successor entities. Plaintiffs have alleged that Defendants failed to pay contractually required revenue share and monthly advances, withheld equity and corporate records, altered governing documents to diminish Plaintiffs' rights, and pursued a merger structure that would eliminate Syndesis and extinguish Plaintiffs' vested revenue and equity interests without assuming obligations.

2. Plaintiffs bring claims for breach of contract and related relief based on Defendants'

1

nonpayment of agreed consideration, including monthly advances and revenue participation tied to Colombia-sourced revenue streams that Defendants acknowledged would survive changes of control, as well as for declaratory and injunctive protections to prevent further dissipation or reorganization tactics aimed at evading these obligations. The disputes include nonpayment of revenue share and monthly advances totaling $780,000 and confirmation by Chief Executive Officer of Agorai Limited and Syndesis Health Inc. Joshua Sutton that "commission payments would survive a change of control," coupled with later communications discussing a buy-out of Plaintiffs' rights.

3. Plaintiffs further assert claims for wrongful withholding of equity, corporate records, and governance disclosures. Defendants refused for years to deliver basic shareholder materials, while secretly issuing substantial insider equity and adopting undisclosed governance amendments that subordinated or impaired existing rights, directly contradicting prior management representations to Plaintiffs. The disputes include failure to issue earned Common Shares and information withholding for more than three years. The Register of Members produced March 16, 2026 reflected Common Shares issued to insiders, including to Joshua Sutton and to Chief Revenue Director Sean Rice, contradicting Mr. Sutton's August 19, 2025 written statement that no insiders had received equity. Plaintiffs contend that amendments adopted in June 2023 and April 2024 were undisclosed and subordinated equity rights, and that the April 2024 amendments altered conversion rights, restricted Ordinary Share participation, and elevated a new Series A class affecting distributions.

4. Plaintiffs also challenge Defendants' proposed and ongoing merger, consolidation, and financing arrangements, including the consolidation of healthcare entities and funding transactions, as part of a strategy to collapse or dissolve the original contracting counterparties and

2

thereby extinguish Plaintiffs' contractual and equity interests unless successor entities expressly assume those obligations. Upon information and belief, Plaintiffs allege Defendants pursued, in part, a merger structure to eliminate Syndesis and extinguish vested revenue and equity interests without assuming obligations, and sought consolidation of Syndesis Health Inc., Xeomics Inc., Seraya Health, and Nexa Health. Defendants disclosed a planned consolidation with Xeomics, and Plaintiffs demanded explicit successor assumptions by ABC Corp., and all consolidated or affiliated entities. Plaintiffs identified imminent funding via a $65 million convertible note and a subsequent merger of Syndesis into Xeomics as milestones relevant to enforcement and the risk of permanent extinguishment of rights upon dissolution of the contracting entities.

5.      As a direct and proximate result of Defendants' conduct, Plaintiffs seek monetary damages for unpaid contractual sums and for harm caused by equity withholding, concealment, and governance changes; equitable relief preventing further impairment of rights; and declaratory relief confirming the scope and enforceability of Plaintiffs' contractual, equity, liquidation preference, and distribution rights vis-à-vis any merger, consolidation, or successor entity. Plaintiffs quantified accrued unpaid monthly advances of approximately $780,000 subject to reconciliation under reporting provisions. Plaintiffs seek, among other remedies, delivery of corporate records including a complete cap table, Series A documentation, ABC Corp./Xeomics transaction documents, and board and shareholder resolutions, as well as confirmation and registration of Common Shares and preservation of Seed Preferred liquidation preferences.

6.      Plaintiffs also seek injunctive protections to maintain the status quo and prevent any transaction steps or insider distributions that would dissipate proceeds or alter priority of claims waterfalls in a manner that subordinates or excludes Plaintiffs, and to ensure successor entities assume the relevant obligations in writing as a condition to any closing. Plaintiffs' proposed

enforcement framework includes restraints against declaring or structuring shareholder distributions, setting or altering record dates, consummating liquidity events, or relying upon the April 30, 2024 M&AA for distributions to the detriment of Plaintiffs' rights. Plaintiffs demanded at least ten business days' advance notice before any merger, consolidation, or reorganization of Syndesis Health Inc. or Xeomics Inc., and required that any successor expressly assume all obligations in writing as a condition to closing.

7.    Finally, Plaintiffs seek all other appropriate relief necessary to protect and enforce their contractual and equity rights, including attorneys' fees, interest, and costs where permitted, and such further damages, declaratory judgments, and injunctive orders as the Court deems just and proper in light of Defendants' conduct and the imminent corporate transactions at issue. Plaintiffs have pursued both monetary and non-monetary relief for these disputes, including attorney fees, interest, costs, and punitive or exemplary relief. Plaintiffs also seek performance obligations compelling share registration and production of core corporate and transaction records to verify and enforce their rights.

**Parties**

8.    Plaintiff Mico Titi LLC ("Mico Titi") is a Delaware limited liability company with a registered office at 1209 N. Orange Street, Wilmington, DE 19801.

9.    Plaintiff Holzer Family Office, LTD. ("HFO") is a Wyoming corporation with a principal address at 30 N. Gould St., Suite R, Sheridan, WY 82801.

10.    Upon information and belief, defendant Agorai Limited ("Agorai") is a British Virgin Islands business company (BVI #1951891) with a principal place of business at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

11.    Upon information and belief, defendant Syndesis Health Inc. ("Syndesis") is a

4

Delaware corporation, a subsidiary of Agorai, with a principal place of business at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

12.     Upon information and belief, defendant Syndesis LLC ("Syndesis") is a Delaware Limited Liability Company, a subsidiary of Agorai, with a principal place of business at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

13.     Upon information and belief, defendant Xeomics, Inc. ("Xeomics") is a Delaware corporation with a principal place of business at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

14.     Upon information and belief, defendant Joshua Daniel Sutton ("Sutton"), Chief Executive Officer of Agorai and Syndesis, is an individual residing in Massachusetts.

15.     Upon information and belief, defendant Seraya Health Inc. ("Seraya Health") is a Delaware corporation, a subsidiary or affiliate of Agorai and/or Syndesis that is included within contemplated consolidation efforts and successor obligations, with business operations coordinated from 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

16.     Upon information and belief, defendant Nexa Inc. ("Nexa") is a Delaware corporation, a subsidiary or affiliate of Agorai and/or Syndesis that is included within contemplated consolidation efforts and successor obligations, with business operations coordinated from 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

17.     Upon information and belief, defendant Noetic Machines Inc. ("Noetic Machines") is a Delaware corporation, an affiliate or sister company within the Agorai/Syndesis enterprise relevant to the obligations at issue, with business operations coordinated from or through 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

18.     Upon information and belief, defendant Datafi Inc. ("Datafi") is a Delaware

5

corporation, an affiliate or sister company within the Agorai/Syndesis enterprise relevant to the obligations at issue, with business operations coordinated from or through 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, Florida 33408.

19.    Upon information and belief, Agorai, Syndesis, Xeomics, Seraya Health, Nexa, Noetic Machines, and Datafi operate as related, affiliated, or successor entities with common leadership and coordinated operations, and have represented or planned that Syndesis, Nexa, and Seraya would be acquired by or consolidated into Xeomics as part of a broader healthcare consolidation strategy.

### Jurisdiction and Venue

20.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiffs and Defendants. Plaintiffs Mico Titi LLC (a Delaware limited liability company with a registered office at 1209 N. Orange Street, Wilmington, DE 19801) and Holzer Family Office, LTD. (a Wyoming corporation with an address at 30 N. Gould St. #Ste R, Sheridan, WY 82801) are citizens of states different from Defendants Agorai Limited (a British Virgin Islands business company), Syndesis Health Inc. (a South Dakota corporation), Xeomics Inc. (a South Dakota corporation), and Joshua Daniel Sutton (an individual associated with Defendants' Palm Beach Gardens, Florida address); the controversy exceeds $75,000, as Plaintiffs seek relief valued at no less than $35,000,000 pursuant to the Settlement Agreement terms and related obligations.

21.    In the alternative, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the dispute arises from commercial contracts and settlement obligations among citizens of different states and a foreign entity, with an amount in controversy far exceeding

$75,000. Defendants include a foreign corporation (Agorai Limited, BVI #1951891) and domestic corporations (Syndesis Health Inc. and Xeomics Inc.), and Plaintiffs claimed settlement consideration is $35,000,000, exclusive of interest and costs.

22.     In the alternative, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because the action arises under the Fair Labor Standards Act (FLSA), a federal statute. The FLSA provides for federal question jurisdiction over claims involving wage and hour violations, and Plaintiffs allege that Defendants have violated provisions of the FLSA.

23.     In the alternative, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal securities laws, including the Securities Exchange Act of 1934. These laws provide for federal question jurisdiction over claims involving securities fraud, where Plaintiffs allege that Defendants have engaged in fraudulent activities affecting the market price of securities. The SEC regulates such violations, and the federal courts are the appropriate venue for adjudicating these claims.

24.     In the alternative, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal statutes prohibiting mail and wire fraud, specifically 18 U.S.C. §§ 1341 and 1343. These statutes provide for federal question jurisdiction over claims involving schemes to defraud using mail or wire communications. Plaintiffs allege that Defendants have engaged in fraudulent schemes utilizing these communications, thereby invoking federal jurisdiction.

25.     This Court also has jurisdiction to enforce arbitration-related obligations or to grant provisional relief in aid of arbitration and settlement enforcement as contemplated by the parties' agreements. The parties' prior dealings included a demand for arbitration before the American

Arbitration Association concerning the underlying commercial dispute; the Settlement Agreement provides for mediation and arbitration administered by the AAA in New York, New York, and permits parties to seek provisional or emergency relief from a court of competent jurisdiction.

26.     Personal jurisdiction is proper because Defendants consented to the personal jurisdiction of courts located in New York, New York, for actions arising out of or relating to the Settlement Agreement. The Settlement Agreement states that any action arising out of or relating to the Agreement shall be brought exclusively in the state or federal courts located in New York, New York, and that each party irrevocably submits to the personal jurisdiction of such courts and waives any objection based on forum non conveniens or improper venue.

27.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the parties contractually selected New York, New York, as the exclusive venue for actions arising out of or relating to the Settlement Agreement, and substantial events giving rise to the claims are tied to New York through the agreements' performance, dispute-resolution framework, and parties' New York-based negotiations and counsel. The Settlement Agreement contains an exclusive forum-selection clause designating the state or federal courts located in New York, New York, for any action arising out of or relating to the Agreement; the Agreement is governed by New York law and specifies New York, New York for mediation and arbitration proceedings; Plaintiffs' counsel of record is based in New York, New York, and issued settlement communications from that office concerning the disputes at issue .

28.     Exercising jurisdiction and venue in this District accords with the parties' express contractual expectations and promotes efficient resolution of disputes centered on a New York–governed Settlement Agreement that selects New York, New York as the exclusive forum. The Settlement Agreement's Governing Law provision designates New York law without regard to

conflicts principles; the Agreement's venue and jurisdiction clause provides exclusive forum in New York, New York, together with a waiver of any objection based on forum non conveniens or improper venue.

## FACTUAL ALLEGATIONS

26. Plaintiffs Mico Titi LLC ("MT") and Holzer Family Office, LTD. ("HFO") entered into a series of agreements with Defendants, including a Consulting Agreement dated August 4, 2021, a Supplemental Agreement dated March 17, 2023, and a Syndesis Referrer Agreement dated February 12, 2024 (collectively, the "Agreements"). The Parties previously entered into a Consulting Agreement dated August 4, 2021, a Supplemental Agreement dated March 17, 2023, and a Syndesis Referrer Agreement dated February 12, 2024.

27. Under the Consulting Agreement, as confirmed by the Supplemental Agreement, Plaintiffs were granted a perpetual 10% revenue share on all Colombia-sourced revenue, with successor-in-title protections and affiliate coverage, including with respect to Agorai Limited, Syndesis Health Inc., and any successor, assignee, merged or acquiring entity (including Xeomics Inc.). Plaintiffs hold a perpetual 10% revenue share on all Colombia-sourced revenue under the Consulting Agreement as amended, with successor and affiliate scope including Agorai Limited, Syndesis Health Inc., and Xeomics Inc.

28. Defendant Joshua Sutton, CEO of Agorai Limited and Syndesis Health Inc., acknowledged in writing that Plaintiffs' commission payments would survive a change of control and, later, discussed a "buy-out" of those rights, reflecting Defendants' recognition that the obligations bind any acquirer or successor. On March 8, 2023, Mr. Sutton confirmed in writing that Plaintiffs' "commission payments would survive a change of control," and on March 13, 2026 he discussed a "buy-out" of Plaintiffs' rights.

29.    Plaintiffs' Colombia efforts secured eight Colombian hospital groups and over 11–12.5 million patient lives under contract forming a core component of Defendants' data assets, from which Plaintiffs' 10% revenue share applies to all Colombia-sourced revenue lines. Colombia hospital contracts encompass in excess of 11,000,000 patient lives, and a Syndesis data catalog presentation confirms in excess of 12,500,000 patient lives in Colombia.

30.    Defendants circulated investor communications describing a planned consolidation of healthcare entities, including the acquisition or combination of Syndesis Health Inc., Xeomics Inc., Seraya Health, and Nexa Health into a consolidated structure led by or including Xeomics, heightening successor-assumption issues for Plaintiffs' rights. An investor communication circulated on December 24, 2025 disclosed plans to consolidate Syndesis, Xeomics, Seraya, and Nexa, envisioning acquisitions by Xeomics as part of a planned consolidation.

31.    Defendants also disclosed material pending and executed transactions, including an MOU with ABC Corp. Group at a $1.9 Billion purchase price, approximately $1 billion of anticipated proceeds to Agorai, a policy to distribute 90% of net proceeds as a cash dividend, and a $150 million Botswana contract signed on December 9, 2025—facts bearing on the urgency of protecting Plaintiffs' equity and revenue rights through any merger or capitalization transaction. A December 24, 2025 confidential investor update disclosed an MOU with ABC Corp. at $1.9 Billion, approximately $1 billion of anticipated proceeds to Agorai, a 90% net proceeds distribution policy, and a $150 million Botswana contract signed December 9, 2025.

32.    Plaintiffs allege that Defendants breached the Agreements by failing to pay the contractual 10% Colombia revenue share and by failing to provide required reporting, certification, and audit rights necessary to reconcile amounts owed. Plaintiffs demanded full revenue share reporting consistent with the Syndesis Referrer Agreement, including quarterly reports, YTD and

cumulative reconciliations, and officer certification, and sought historical reports and explanations of discrepancies.

33.    Under Section 3.1 of the Syndesis Referrer Agreement, Plaintiffs were to receive monthly advances of $15,000 per month per client beginning February 2024 as draws against commission payments, which Mr. Sutton also acknowledged in writing would be paid consistent with available funds, yet Defendants failed to pay these amounts. The Syndesis Referrer Agreement provided for $15,000 monthly advances per client from February 2024, and Mr. Sutton stated on August 19, 2025, that such advances and incremental revenue share amounts would be paid promptly once funds were received and going forward on a consistent monthly basis, funds permitting.

34.    Plaintiffs calculate accrued but unpaid monthly advances of approximately $780,000 (two clients x $15,000/month x 26 months), subject to reconciliation upon receipt of complete reporting under the Agreements; Defendants later disputed this obligation notwithstanding prior acknowledgments. Plaintiffs calculated $780,000 in accrued but unpaid monthly advances and, on March 13, 2026, Mr. Sutton sent a termination notice disputing the claim in full.

35.    Defendants withheld equity and corporate records from Plaintiffs over multiple years, including failing to timely issue or register Plaintiffs' earned Common Shares (earned 2021–2023), while insiders were issued Common Shares, including certain shares to Mr. Sutton personally and to Sean Rice, as later revealed by the Register of Members produced March 16, 2026. The Register of Members produced on March 16, 2026 showed Common Shares issued to insiders, including to Joshua Sutton (on February 25, 2021 and on April 26, 2022) and to Sean

Rice (on February 25, 2021 and on April 26, 2022), while Plaintiffs' earned shares from 2021–2023 were withheld.

36.     On August 19, 2025, Mr. Sutton wrote that no insiders had yet received their equity, a statement directly contradicted by the Register of Members, evidencing information withholding and concealment material to Plaintiffs' equity rights and dilution protections. Mr. Sutton stated on August 19, 2025 that no other Agorai/Syndesis investors, founders, advisors, or employees had yet received physical or digital possession of their equity, which was contradicted by the subsequently produced Register of Members.

37.     Plaintiffs also allege undisclosed or concealed amendments to governing documents, including June 2023 and April 2024 amendments to the company's Memorandum and Articles of Association ("M&AA") that subordinated or altered equity rights, conversion mechanics, or distribution priorities to Plaintiffs' detriment. Plaintiffs identify undisclosed June 2023 and April 2024 amendments to the M&AA that affected equity rights and priorities and were concealed for extended periods.

38.     Plaintiffs sought delivery of core shareholder documents as conditions precedent to any resolution, including registration of their Common Shares at Harneys with certificates, a complete fully diluted cap table, all Series A subscription and conversion documentation, board and shareholder resolutions for all amendments, and comprehensive transaction documents for the contemplated ABC Corp./Xeomics consolidation (including LOI, merger agreement, consideration structure, distribution waterfall, and any fairness opinion). Plaintiffs demanded delivery of their Common Shares registered at Harneys with certificates, a complete fully diluted capitalization table, all Series A documentation, all board and shareholder resolutions for

12

amendments, and all ABC Corp./Xeomics transaction documents including LOI, merger agreement, consideration structure, distribution waterfall, and fairness opinion.

39.    Plaintiffs hold Series Seed Preferred Shares under the 2021 M&AA and demanded confirmation that their first-priority liquidation preference would be honored at not less than $3,000 per share or any higher negotiated amount, together with participation rights upon reaching applicable thresholds. Plaintiffs demanded written confirmation that their Series Seed Preferred Shares will receive the greater of $3,000 per share or any higher negotiated amount with first-priority liquidation preference and applicable participation rights under the 2021 M&AA.

40.    In parallel with the emergence of the Xeomics/ABC Corp. consolidation plan, Plaintiffs demanded successor and assumption protections to ensure any merger, consolidation, reorganization, or asset transfer expressly assumes and honors all obligations owed to Plaintiffs, including their perpetual 10% Colombia revenue share and equity rights, with notice to Plaintiffs at least ten business days prior to consummation of any such transaction. Plaintiffs required express successor assumption of obligations in any merger or consolidation and at least ten business days' advance written notice before consummating any such transaction involving Syndesis, Xeomics, or other entities affecting Plaintiffs' rights.

41.    Plaintiffs allege that Defendants' failure to provide required revenue reports, to make monthly advance payments, to honor and protect Plaintiffs' equity rights, and to ensure successor obligations in light of the planned consolidation constitute breaches of the Agreements and the parties' course of dealing, and jeopardize Plaintiffs' contractual entitlements amid imminent corporate transactions. Defendants did not provide the revenue share reporting and reconciliations demanded, did not pay the $15,000 monthly advances per client from February 2024 as acknowledged would be paid funds permitting, and pursued consolidation plans requiring

13

explicit successor protections.

42.    Plaintiffs attempted to resolve these disputes and on March 26, 2026 issued a final settlement demand setting forth required document deliveries, payment mechanics, and successor protections, including deadlines for shareholder document delivery and settlement acceptance, given the imminent funding of a $65 million convertible note and contemplated merger of Syndesis into Xeomics. On March 26, 2026, Plaintiffs, through counsel, delivered a final settlement demand requiring shareholder document delivery by March 30, 2026 and settlement acceptance the same day, referencing imminent $65 million convertible note funding and a merger of Syndesis into Xeomics within weeks.

43.    In connection with dispute resolution efforts, the Parties negotiated a settlement framework that conditioned releases on a $35,000,000 settlement payment following a qualifying capitalization transaction and on the delivery of specified equity and governance documents; the settlement terms preserved successor-assumption requirements and personal obligations by Mr. Sutton to guarantee performance. The Settlement Agreement provides for a $35,000,000 payment contingent on a Capitalization Transaction, conditions precedent for share registration and corporate documents, express successor assumption, advance notice before any merger or consolidation, and Joshua Sutton's personal guarantee.

44.    Plaintiffs also initiated proceedings before the American Arbitration Association asserting that Defendants failed to pay required revenue share and monthly advances, withheld equity and corporate records, altered governing documents to diminish Plaintiffs' rights, and pursued a merger designed to eliminate Plaintiffs' vested interests without assumption of obligations, despite Plaintiffs' role in securing key hospital network relationships underlying Defendants' data assets. A AAA Demand for Arbitration states that Defendants failed to pay

14

revenue share and monthly advances, withheld equity and records, secretly altered governing documents to diminish rights, and pursued a merger structure that would eliminate Plaintiffs' vested interests without assumption, notwithstanding Plaintiffs' securing of key hospital network relationships.

46. As a result of Defendants' conduct, Plaintiffs have incurred substantial harm including the non-receipt of contractually owed revenue and advances, dilution and subordination risks to their equity and liquidation preferences, loss of governance transparency and timely corporate records, and imminent impairment of rights due to consolidation and merger plans unless Defendants honor successor assumptions and provide required notices and documentation. Plaintiffs have sought disclosure of transaction-related documents and capitalization information due to nondisclosure over more than three years and requested court-enforceable protections tied to consolidation and distributions consistent with a stated 90% distribution policy.

**CAUSES OF ACTION**

**COUNT I — Breach of Contract**

46. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

47. Plaintiffs and Defendants entered into binding written agreements, including the Consulting Agreement (Aug. 4, 2021), the Supplemental Agreement (Mar. 17, 2023), and the Syndesis Referrer Agreement (Feb. 12, 2024) (collectively, the "Agreements").

48. Under these Agreements, Defendants were required to:

49. Pay Plaintiffs a perpetual 10% revenue share on all Colombia-sourced revenue, including through any affiliate, successor, acquirer, or merged entity.

50. Pay $15,000 per-client monthly advances beginning February 2024 as draws

15

against commission payments.

51.    Provide complete revenue-share reporting, quarterly reconciliations, and officer certifications.

52.    Deliver Plaintiffs' earned Common Shares, together with required corporate and shareholder records.

53.    Honor Plaintiffs' equity rights, including Series Seed liquidation preferences.

54.    Ensure successor assumption of all obligations in any merger, consolidation, or restructuring.

55.    Defendants repeatedly acknowledged these obligations, including written confirmation by CEO Joshua Sutton that Plaintiffs' revenue-share rights "would survive a change of control" and that monthly advances would be paid promptly once funds were received.

56.    Defendants materially breached the Agreements by, among other things: Failing to pay the 10% Colombia revenue share; Failing to pay approximately $780,000 in accrued monthly advances; Failing to provide required revenue reporting and reconciliations; Wrongfully withholding Plaintiffs' earned Common Shares; Concealing insider equity issuances while denying Plaintiffs their shares; Withholding corporate records and governance amendments; Secretly amending governing documents in June 2023 and April 2024 to subordinate Plaintiffs' rights; Pursuing mergers and consolidations designed to eliminate Plaintiffs' contractual and equity rights without successor assumption.

57.    Plaintiffs performed all of their obligations under the Agreements or were excused therefrom.

58.    As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered substantial damages, including: Unpaid revenue share; Unpaid monthly advances; Loss and

16

dilution of equity rights; Loss of governance rights and corporate transparency; Impairment of liquidation preferences and distribution rights;

**COUNT II — Breach of the Implied Covenant of Good Faith and Fair Dealing**

59.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

60.    Every contract governed by New York law includes an implied covenant of good faith and fair dealing, which prohibits a party from acting in a manner that would deprive the other party of the benefits of the contract.

61.    Plaintiffs' Agreements with Defendants required Defendants to act in good faith in safeguarding Plaintiffs' revenue share, equity rights, access to corporate information, and successor protections.

62.    Defendants acted in bad faith and in a manner designed to frustrate Plaintiffs' rights under the Agreements, including by:

63.    Concealing equity issuances to insiders while withholding Plaintiffs' earned shares;

64.    Misrepresenting that no insiders had received equity when insider shares had in fact been issued;

65.    Withholding cap tables, Series A documents, board resolutions, and transaction records for more than three years;

66.    Secretly adopting governance amendments (June 2023 and April 2024) that diluted or subordinated Plaintiffs' equity and liquidation rights;

67.    Structuring and pursuing mergers and consolidations (including the Xeomics/ABC Corp. healthcare consolidation and related $65 million funding transactions) that would extinguish Plaintiffs' vested rights unless Plaintiffs' demands were conceded;

68.    Ignoring or repudiating obligations to provide required notice prior to merger or consolidation events;

69.    Using information asymmetry and concealment as leverage in settlement negotiations.

70.    Defendants' actions were deliberately designed to deprive Plaintiffs of the fruits of the Agreements, namely: Their perpetual 10% Colombia revenue share; Their compensation advances; Their earned equity and liquidation preference rights;

71.    The protections afforded by successor-assumption requirements.

72.    As a result of Defendants' bad-faith conduct, Plaintiffs suffered damages including but not limited to unpaid compensation, impairment of equity interests, loss of governance rights, and substantial economic harm.

73.    Plaintiffs seek all damages arising from Defendants' breach of the implied covenant of good faith and fair dealing, together with interest, fees, costs, and all further relief deemed appropriate by the Court.

## COUNT III — Declaratory Judgment

*(28 U.S.C. § 2201; Against All Defendants)*

74.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

75.    An actual, substantial, and justiciable controversy exists between Plaintiffs and Defendants regarding Plaintiffs' contractual, equity, revenue-share, and successor-assumption rights. Defendants dispute or have repudiated these rights, creating uncertainty that requires judicial declaration.

76.    Under the Agreements, Plaintiffs possess a perpetual 10% revenue share on all

Colombia-sourced revenue, expressly extending to successors, assignees, merged or acquiring entities, including Xeomics and any consolidated entity. Defendants have disputed or refused to honor these obligations.

77.    Plaintiffs also hold contractual rights to monthly advances beginning February 2024, share issuance, equity protections, liquidation preferences, governance participation, and timely disclosure of corporate documents, each of which Defendants have challenged, withheld, or otherwise impaired.

78.    Defendants have undertaken or proposed mergers, consolidations, restructurings, and funding transactions, including a $65 million convertible note, ABC Corp. $2 billion MOU, and consolidation of Syndesis, Xeomics, Seraya, and Nexa, without acknowledging or ensuring required successor assumption of obligations owed to Plaintiffs.

79.    Defendants have also undertaken actions and issued contradictory statements regarding Plaintiffs' equity, including withholding earned shares while issuing insider shares and amending governing documents in undisclosed ways (June 2023, April 2024) impacting Plaintiffs' rights.

80.    Plaintiffs therefore seek a judicial declaration confirming:

a. The enforceability and continuity of Plaintiffs' perpetual 10% Colombia revenue-share rights;

b. That these rights bind all successors, acquirers, merged entities, and affiliates;

c. That Defendants must deliver Plaintiffs' Common Shares, confirm their Series Seed liquidation preferences, and restore all equity rights impaired by undisclosed amendments sse. That Defendants must provide full corporate records, cap tables, Series A documentation, and transaction materials.

81.    Declaratory relief is necessary and appropriate to define and enforce the parties'

rights, prevent irreparable harm from imminent transactions, and avoid further breaches, concealment, or dilution of Plaintiffs' interests.

82.     Plaintiffs therefore seek a declaratory judgment under 28 U.S.C. § 2201 consistent with the foregoing.

**COUNT IV — Injunctive Relief**

*(Against All Defendants)*

83.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

84.     Defendants have undertaken and continue to undertake steps designed to impair, dilute, or extinguish Plaintiffs' contractual and equity rights, including: Planning and executing mergers and consolidations involving Syndesis, Xeomics, Seraya, and Nexa; Pursuing a ABC Corp. consolidation/merger transaction and related $65 million financing; Withholding shareholder documents and governance information; Amendments to governing documents adopted without notice that subordinate or alter Plaintiffs' equity rights; Issuing substantial insider equity while refusing to issue Plaintiffs' earned shares.

85.     These actions pose imminent and irreparable harm, including: Elimination of the original contracting entities; Dissolution or restructuring without successor assumption; Dilution or subordination of Plaintiffs' equity and liquidation preferences; Dissipation of merger proceeds under a stated 90% distribution policy that could leave Plaintiffs without recourse; Permanent loss of transparency and ability to verify rights through withheld documents.

86.     Monetary relief alone cannot prevent these harms because once a merger, consolidation, distribution, or dissolution occurs, Plaintiffs' contractual and equity rights may be permanently extinguished.

87.    Plaintiffs therefore seek preliminary and permanent injunctive relief restraining Defendants from: Consummating any merger, consolidation, asset transfer, restructuring, or dissolution involving Syndesis, Xeomics, Seraya, Nexa, Agorai, or any affiliate unless all obligations to Plaintiffs are expressly assumed in writing; Issuing or reallocating equity, altering conversion mechanics, or adopting further governance amendments that dilute Plaintiffs' interests; Altering record dates, making insider distributions, or allocating proceeds of any capitalization event or merger in a manner that subordinates Plaintiffs' interests; Failing to provide at least ten business days' written notice prior to any merger, consolidation, reorganization, or restructuring event; Withholding or failing to deliver required corporate records, cap tables, Series A documentation, or ABC Corp./Xeomics transaction materials.

88.    Plaintiffs also request that the Court maintain the status quo pending final adjudication, including: Preservation of all rights under the Agreements; Maintenance of Plaintiffs' equity priority and liquidation rights under the 2021 M&AA; Preservation of any revenue-producing contracts underlying Plaintiffs' 10% revenue share.

89.    Plaintiffs have no adequate remedy at law for these threatened injuries, and injunctive relief is necessary to prevent irreparable harm and ensure that Defendants do not evade their obligations through restructuring, concealment, or dissolution.

90.    Plaintiffs therefore request the issuance of preliminary and permanent injunctions consistent with the foregoing.

## COUNT V — Specific Performance

*(Against All Defendants)*

91.    Plaintiffs repeat and reallege all allegations set forth above as though fully stated herein.

92.     Plaintiffs and Defendants entered into binding Agreements that impose affirmative, non-monetary obligations on Defendants, including the obligation to: Issue and register earned Common Shares; Deliver a complete and accurate fully diluted capitalization table; Provide all Series A subscription and conversion documentation; Provide all board and shareholder resolutions for amendments to governing documents, including the undisclosed June 2023 and April 2024 amendments; Produce all ABC Corp./Xeomics transaction documents, including LOIs, merger documents, consideration structures, distribution waterfalls, and fairness opinions; Provide revenue-share reporting, reconciliations, certifications, and corporate records.

93.     Defendants have failed and refused to perform these non-monetary obligations despite repeated demands and despite their contractual duty to do so. Among other failures, Defendants:

94.     Withheld Plaintiffs' earned Common Shares for more than three years;

95.     Concealed insider equity issuances of shares, contradicting previous representations and depriving Plaintiffs of required transparency;

96.     Failed to provide the required cap tables, Series A documentation, board resolutions, and transaction records;

97.     Concealed or failed to produce amendments to governing documents that affected Plaintiffs' rights;

98.     Withheld corporate and financial reporting required to calculate Plaintiffs' revenue share and advances.

99.     These obligations are unique, non-fungible, and incapable of adequate monetary substitution, including the rights tied to equity ownership, liquidation preferences, corporate governance information, and the ability to verify Defendants' capitalization, mergers, and

22

successor obligations.

100. Without specific performance, Plaintiffs will suffer irreparable harm, including: Inability to verify their equity position; Subordination of liquidation preferences; Potential extinguishment of contractual rights through undisclosed mergers or consolidations; Permanent informational asymmetry preventing Plaintiffs from enforcing revenue-share obligations or protecting their interests in imminent corporate transactions.

101. Defendants are contractually required to perform these obligations and have no basis to refuse performance.

102. Plaintiffs therefore request that the Court order Defendants to specifically perform their obligations under the Agreements, including: Registering and delivering Plaintiffs' Common Shares; Producing a complete and accurate cap table; Producing all Series A instruments and conversion files; Producing all board and shareholder resolutions supporting amendments and equity issuances; Producing all documents concerning the ABC Corp./Xeomics consolidation and $65 million financing, including agreements, consideration structures, waterfall analyses, and fairness opinions; Delivering all revenue-share reporting, reconciliations, and certifications required under the Agreements.

103. Plaintiffs further request any additional equitable relief necessary to ensure compliance and protect their contractual and equity rights.

## COUNT VI — Accounting

*(Against All Defendants)*

104. Plaintiffs repeat and reallege all allegations set forth above as though fully stated herein.

105. Defendants are contractually required to provide Plaintiffs with detailed financial

reporting necessary to determine the amounts owed under Plaintiffs' perpetual 10% Colombia revenue share and monthly advance payments, including quarterly reports, cumulative reconciliations, and officer certifications.

106.    Plaintiffs are also entitled to transparency regarding distributions, capitalization transactions, mergers, consolidations, sale proceeds, and equity issuances, including: Revenues associated with Colombia hospital contracts covering 11–12.5 million patient lives; The ABC Corp. MOU valued at $2 billion and expected $1 billion in proceeds to Agorai; The $150 million Botswana contract; The $65 million convertible note; The stated 90% net-proceeds distribution policy; Insider equity issuances of shares; All related subsidiary and affiliate revenue streams.

107.    Defendants have failed to provide the contractual reporting and necessary financial information, including: Revenue reports; Year-to-date and cumulative reconciliations; Officer certifications; Documentation reconciling insider equity issuances; Transaction records for imminent consolidation events; Board and shareholder materials.

108.    Plaintiffs cannot determine the full extent of amounts owed to them under the Agreements without a complete accounting, and Defendants exclusively possess this information.

109.    Equity requires that the Court order a full and accurate accounting of all matters relevant to Plaintiffs' compensation, equity, distributions, and liquidation preferences.

110.    Plaintiffs therefore seek an accounting requiring Defendants to disclose and verify: All revenue streams and associated data assets; All monthly advances due and unpaid; All distributions, capital raises, note issuances, merger proceeds, and planned or executed consolidations; All insider and outsider equity issuances; All financial records necessary to confirm Plaintiffs' revenue-share entitlements and equity rights.

111.    Plaintiffs also seek any additional equitable relief necessary to ensure completeness, accuracy, and transparency of the accounting.

**COUNT VII — Unjust Enrichment (Pled in the Alternative)**

*(Against All Defendants)*

112.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

113.    To the extent any contract or portion thereof is deemed unenforceable, inapplicable, or otherwise insufficient to provide a remedy, Plaintiffs plead this claim for unjust enrichment in the alternative.

114.    Plaintiffs conferred substantial, valuable benefits upon Defendants, including:

115.    Securing eight Colombian hospital groups representing 11–12.5 million patient lives, forming the core of Defendants' data assets and revenue streams;

116.    Providing referral, commercialization, and expansion support in Colombia that created enduring revenue opportunities for Defendants;

117.    Developing and facilitating strategic relationships that materially increased the enterprise value of Defendants, including in connection with transactions such as the $2 billion ABC Corp. MOU, the $150 million Botswana contract, and the proposed consolidation into Xeomics.

118.    Defendants knowingly accepted and benefited from these efforts and representations, repeatedly acknowledging that Plaintiffs' contributions generated significant value for the organization and its affiliates.

119.    Despite accepting these substantial benefits, Defendants failed to compensate Plaintiffs as promised or required, including failing to pay: The perpetual 10% Colombia revenue

share; More than $780,000 in accrued monthly advances; Equity consideration ( earned shares); Any portion of the value derived from mergers, consolidations, data monetization, or international revenue streams.

120. Defendants also received and retained the benefits of Plaintiffs' relationships, data-asset development, and revenue-production work while simultaneously engaging in conduct designed to impair Plaintiffs' compensation and equity rights, including concealed insider equity issuances, withheld reporting, and secret amendments to governing documents.

121. It would be inequitable and unjust for Defendants to retain the benefits conferred by Plaintiffs without full and fair compensation.

122. Plaintiffs therefore seek restitution, disgorgement, and all equitable remedies appropriate to prevent Defendants' unjust enrichment.

### COUNT VIII — Attorneys' Fees and Costs

*(Against All Defendants)*

123. Plaintiffs repeat and reallege the allegations set forth above as though fully stated herein.

124. Plaintiffs have been forced to retain legal counsel and incur substantial attorneys' fees and litigation costs to protect their contractual, equity, and economic rights as a result of Defendants' breaches, concealment, misconduct, and refusal to honor their obligations.

125. The Agreements provide for or contemplate the recovery of attorneys' fees, costs, and related expenses in connection with enforcement actions, arbitration demands, and proceedings necessary to protect Plaintiffs' rights.

126. Plaintiffs' claims also arise from conduct involving bad-faith refusal to perform contractual obligations, concealment of governance amendments, failure to issue earned equity,

and obstruction of required disclosures, which independently justify fee-shifting under applicable law.

127.    Plaintiffs' pursuit of this action, including requests for damages, specific performance, accounting, declaratory judgment, and injunctive relief, was necessitated solely by Defendants' wrongful acts and omissions.

128.    Plaintiffs therefore seek: All reasonable attorneys' fees incurred to date; All future fees required to litigate this action; All associated costs and disbursements; Pre- and post-judgment interest on all recoverable amounts.

### COUNT IX — Federal Securities Fraud

*(Section 10(b) of the Securities Exchange Act of 1934 & Rule 10b-5; Against All Defendants)*

129.    Plaintiffs repeat and reallege all allegations above as though fully set forth herein.

130.    Defendants made material misstatements and omissions in connection with the purchase, sale, allocation, issuance, or valuation of securities in Agorai, Syndesis, and related entities.

131.    Defendants knowingly misrepresented and concealed: That insiders had received Common Shares, including to C.E.O. Joshua Sutton and to co-founder Sean Rice and others, despite written representations on August 19, 2025 that no insiders had received equity; That governing documents had been amended in June 2023 and April 2024 without disclosure to Plaintiffs, altering equity, conversion, and liquidation rights; That Defendants were planning merger and consolidation structures designed, in part, to eliminate Syndesis and extinguish Plaintiffs' vested equity and revenue interests without successor assumption; That the ABC Corp. MOU valued at $2 billion and related proceeds would be distributed pursuant to a 90% net-proceeds policy, while withholding material information from Plaintiffs; That Plaintiffs'

shares, liquidation preferences, and distribution rights were being subordinated through undisclosed corporate actions.

132.    These misstatements and omissions were made knowingly, intentionally, or recklessly, including through written communications, internal records, investor materials, and governance documents.

133.    These acts were made in connection with the purchase, sale, issuance, and valuation of securities, including Plaintiffs' earned Common Shares, Plaintiffs' Series Seed Preferred Shares, and securities of Agorai, Syndesis, and related entities.

134.    Plaintiffs reasonably relied on Defendants' statements and omissions, including reliance on: Assurances that equity allocations were accurate; Statements that no insiders had been issued Common shares; Representations that Plaintiffs' revenue rights and equity would survive change-of-control events; Representations that corporate governance documents had not been materially amended.

135.    Plaintiffs suffered damages, including dilution, subordination of liquidation preferences, deprivation of contractual rights, and impairment of equity value.

136.    Plaintiffs therefore seek damages, recessionary relief, injunctive protections, and all remedies available under the Securities Exchange Act of 1934.

**COUNT X — Federal Mail and Wire Fraud (Jurisdictional Allegations Only)**

*(18 U.S.C. §§ 1341, 1343 — No Private Right of Action)*

137.    Plaintiffs repeat and reallege all allegations above as though fully set forth herein.

138.    Defendants engaged in schemes to defraud Plaintiffs through the use of interstate mail and wire communications, including emails, investor updates, written acknowledgments, and electronic transmissions.

139.    These communications included: Misrepresentations regarding insider equity issuance and cap tables; Concealment of amendments to governing documents; Communications denying the existence of insider shares despite the issuance of shares; Investor communications describing mergers, consolidations, and multi-entity structures designed to remove obligations owed to Plaintiffs while withholding material information from them.

140.    These acts constitute mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

141.    Plaintiffs acknowledge that these statutes do not create a private civil cause of action; however, these violations: Support federal-question jurisdiction; Support injunctive relief; Support equitable remedies; Demonstrate Defendants' fraudulent intent and pattern of concealment. Plaintiffs seek recognition of these violations for jurisdictional and equitable purposes.

**COUNT XI — Violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–216**

(Against All Defendants)

142.    Plaintiffs repeat and reallege all allegations set forth above as though fully stated herein.

143.    From June 2021 through March 13, 2026, Plaintiffs Juan Carlos Ardila and Denise Holzer performed continuous work for Defendants Agorai Limited, Syndesis Health Inc., and their related entities under a series of Consulting, Supplemental, and Referrer Agreements. During this entire period, Plaintiffs received zero cash compensation; no salary, no hourly wages, no minimum wage payments, no overtime pay, no advances actually paid, and no revenue-share payments. Compensation consisted solely of equity grants, some of which were never actually issued or registered.

144.    Throughout this approximately five-year period, Plaintiffs regularly worked part-

29

time hours performing business development, hospital acquisition, and data-asset functions that were integral to Defendants' core business and essential to Defendants' enterprise valuation and investor solicitations.

145.    Defendants improperly classified Plaintiffs as "independent contractors" even though, under the Department of Labor's Six-Factor Economic Reality Test, Plaintiffs were in fact employees within the meaning of 29 U.S.C. § 203(e). The totality of the circumstances overwhelmingly demonstrates economic dependence rather than independent business status. Plaintiffs had no meaningful opportunity for profit or loss, as their compensation was fixed by Defendants and they possessed no authority over pricing, contract terms, or their own earnings. They made no capital investment of their own, contributing only their labor while Defendants supplied all significant business infrastructure and resources. Their relationship with Defendants was long-term and continuous, spanning nearly five years and three successive agreements, reflecting the permanence typical of employment rather than project-based contracting. Defendants also exercised substantial control over Plaintiffs' work, with the CEO directing core tasks, dictating hospital targets, controlling contract execution, requiring attendance at company events, and determining all compensation flows. Plaintiffs' work was central to Defendants' business, as hospital data acquisition formed the foundation of Defendants' monetization model. Finally, although Plaintiffs brought specialized skills to the relationship, those skills were applied almost exclusively on Defendants' behalf, reflecting economic dependence rather than independent entrepreneurial initiative. Plaintiffs were therefore "employees" under the FLSA and entitled to minimum wage, overtime, recordkeeping protections, wage notices, and liquidated damages under 29 U.S.C. § 216(b).

**B. Minimum Wage Violations (29 U.S.C. § 206)**

146.    Federal minimum wage during the relevant period was $7.25 per hour. Plaintiffs performed ongoing work for Defendants over multiple years and received no cash compensation whatsoever for that work. 147. Defendants' failure to pay even the minimum required wages for the hours Plaintiffs worked constitutes a willful violation of 29 U.S.C. § 206(a).Defendants' failure to pay any wages, much less minimum wage, constitutes a willful violation of 29 U.S.C. § 206(a).

## C. Overtime Violations (29 U.S.C. § 207)

147.    Plaintiffs routinely worked in excess of 40 hours per week, including evenings, weekends, conference travel, and ongoing business development activities. Defendants paid zero overtime compensation as required by 29 U.S.C. § 207(a).

## D. Recordkeeping Violations (29 U.S.C. § 211(c))

During various periods of their engagement, Plaintiffs' responsibilities required them to work beyond standard working hours, including evenings, weekends, travel, and ongoing business development activities. To the extent Plaintiffs worked more than forty hours in any given workweek, Defendants failed to pay the overtime premium required by 29 U.S.C. § 207(a).**E.**

## Willfulness and Statute of Limitations (29 U.S.C. § 255(a))

148.    Defendants' violations were willful, as evidenced by: A five-year period of zero cash compensation; Knowledge that Plaintiffs' work was essential to the company's operations; CEO-level direction and control over Plaintiffs' activities; Internal acknowledgment of "permanent role" status; Concealment of insider equity issuances and governance amendments; Continued misclassification even after execution of the $15,000/month advance structure, which resembled a salary.

149.    Willfulness extends the FLSA limitations period from two years to three years.

F. Damages

150.    As a direct and proximate result of Defendants' FLSA violations, Plaintiffs have suffered significant damages, including: Federal minimum wage back pay for the full lookback period; Overtime compensation for all hours worked over 40 per week; 100% liquidated damages, doubling the unpaid wages (29 U.S.C. § 216(b)); Pre-judgment interest where liquidated damages are not awarded; Attorneys' fees and costs, mandatory under §216(b);

151.    Plaintiffs additionally seek any statutory penalties available under the New York Labor Law relating to wage notices and wage statements.

COUNT XII — Arbitration-Related Claims and Provisional Relief

*(Federal Arbitration Act, 9 U.S.C. §§ 1–16; Against All Defendants)*

152.    Plaintiffs repeat and reallege all allegations above as though fully set forth herein.

153.    The Agreements include provisions requiring mediation and arbitration administered by the American Arbitration Association in New York, New York, and authorizing parties to seek provisional or emergency relief from a court of competent jurisdiction.

154.    Plaintiffs invoked their rights under the FAA and the Agreements by issuing a AAA Demand for Arbitration alleging: Nonpayment of revenue share; Nonpayment of monthly advances; Withholding of equity and corporate records; Undisclosed governance amendments; A merger strategy designed to extinguish Plaintiffs' rights.

155.    Imminent corporate transactions, including: A $65 million convertible note; A planned consolidation of Syndesis into Xeomics; A proposed ABC Corp./Xeomics merger, create urgency requiring provisional relief to protect the arbitration's subject matter.

156.    Under the FAA, courts may issue temporary restraining orders, preliminary injunctions, and other provisional remedies where such relief is necessary to preserve the

integrity and meaningfulness of arbitration proceedings.

157.    Plaintiffs seek: Provisional relief to maintain the status quo pending arbitration; Orders requiring production of corporate records and equity documentation; Injunctions prohibiting mergers, consolidations, restructurings, and insider distributions absent successor assumption; Any further relief necessary to prevent frustration of the arbitration process.

### COUNT XIII — Enforcement of Forum-Selection and Governing-Law Clauses

*(Against All Defendants)*

158.    Plaintiffs repeat and reallege all allegations above as though fully set forth herein.

159.    The Settlement Agreement includes mandatory forum-selection provisions requiring that any action arising out of or relating to the Agreement be brought exclusively in the state or federal courts located in New York, New York.

160.    Defendants expressly consented to personal jurisdiction in New York and waived objections based on improper venue or forum non conveniens.

161.    The Agreements also include a Governing Law clause requiring application of New York law, without respect to conflicts-of-law principles.

162.    Defendants have acted in ways inconsistent with these contractual commitments, including attempting to restructure, reassign, or dissolve entities in a manner designed to evade judicial oversight in New York.

163.    Plaintiffs seek declaratory, injunctive, and enforcement orders confirming that:

a. New York law governs all disputes arising from the Agreements;

b. New York federal and state courts are the exclusive appropriate fora;

c. Any attempt to shift venue or avoid the forum-selection clause is void;

d. All Defendants remain bound by these provisions notwithstanding mergers, reorganizations, or

successor structures.

164.    Plaintiffs further seek enforcement orders ensuring that any successor entity, whether through merger, consolidation, acquisition, or dissolution, remains subject to the same forum-selection and governing-law obligations as their predecessors.

### COUNT XIV — Pre- and Post-Judgment Interest

*(Against All Defendants)*

165.    Plaintiffs repeat and reallege all allegations set forth above as though fully stated herein.

166.    As detailed in the preceding Counts, Defendants have failed to pay contractually required sums, including: Plaintiffs' perpetual 10% Colombia revenue share; More than $780,000 in accrued monthly advances; Additional monetary obligations arising from Defendants' breaches of contract, withholding of equity, and failure to provide revenue-related reporting necessary to reconcile amounts owed.

167.    As a direct result of Defendants' breaches, delays, concealment, and refusal to perform, Plaintiffs have been deprived of the timely use and benefit of these funds and have suffered additional economic harm.

168.    Plaintiffs are therefore entitled to pre-judgment interest on all unpaid amounts at the maximum rate allowed by law, including but not limited to interest recoverable under New York law applicable to contract claims, statutory obligations, and equitable awards.

169.    Plaintiffs are also entitled to post-judgment interest at the highest rate permitted by 28 U.S.C. § 1961, accruing on all sums awarded until full satisfaction of judgment.

170.    Awarding pre- and post-judgment interest is necessary to fully compensate Plaintiffs for Defendants' wrongful conduct, including Defendants' multi-year withholding of

payments, failure to report revenues, concealment of insider equity issuances, and strategic delay surrounding mergers and financing transactions (including the ABC Corp. MOU and $65 million note) that affected Plaintiffs' ability to enforce their rights.

171.    Plaintiffs therefore seek an order awarding pre- and post-judgment interest on all monetary awards in this action.

## COUNT XV — Further Relief (Including All Other Relief the Court Deems Just and Proper)

*(Against All Defendants)*

172.    Plaintiffs repeat and reallege all allegations set forth above as though fully stated herein.

173.    As set forth in detail throughout this Complaint, Defendants' conduct includes: Repeated breaches of multiple contracts; Nonpayment of revenue share and monthly advances; Withholding of corporate records, revenue certifications, and shareholder documents; Concealed insider equity issuances totaling shares; Withholding Plaintiffs' earned Common Shares; Secret amendments to governing documents in June 2023 and April 2024 affecting equity, conversion, and liquidation rights; Pursuit of mergers, consolidations, and a multi-entity restructuring designed to extinguish Plaintiffs' contractual and equity entitlements without successor assumption; Imminent consolidation and funding steps, including the $65 million convertible note and the contemplated ABC Corp./Xeomics merger, requiring judicial protections to avoid irreparable harm.

174.    Plaintiffs have sought specific categories of monetary, declaratory, equitable, and injunctive relief; however, additional relief may be necessary to: Preserve Plaintiffs' rights during complex and evolving transactions; Prevent dissipation of assets subject to Plaintiffs' revenue

share, liquidation preferences, and distribution rights; Ensure successor entities, merged entities, acquirers, and affiliates are bound by the Agreements; Compel further production and transparency as new information emerges.

175.    The Court therefore possesses broad equitable authority, under both federal jurisdictional statutes and New York law, to grant any and all further relief necessary to: Protect Plaintiffs' contractual, economic, and equity rights; Prevent Defendants from evading obligations through restructuring or concealment; Ensure the integrity of the judicial process; Prevent irreparable or irreversible harm tied to consolidation, capital raises, insider distributions, and governance changes.

176.    Plaintiffs therefore request that the Court grant all further relief, whether legal, equitable, or declaratory, that it deems just, proper, necessary, or appropriate under the circumstances, including relief arising from facts discovered during litigation, discovery, or ongoing corporate transactions.

177.    This includes, but is not limited to, relief ensuring that no merger, consolidation, reorganization, asset transfer, recapitalization, or dissolution may occur without: Full successor assumption of obligations; Delivery of all corporate records; Preservation of Plaintiffs' equity and liquidation rights; Adequate notice to Plaintiffs; Court oversight where warranted.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiffs Mico Titi LLC and Holzer Family Office, LTD respectfully request that the Court enter judgment in their favor and against all Defendants, jointly and severally where permitted, and award the following relief:

**1. Damages for Breach of Contract (Counts I & II)**

Award Plaintiffs compensatory damages for Defendants' breaches of the Agreements and of the implied covenant of good faith and fair dealing, including but not limited to:

a. All unpaid 10% Colombia-sourced revenue share;

b. All unpaid monthly advances (estimated $780,000, subject to reconciliation);

c. Damages resulting from Defendants' withholding of Plaintiffs' earned shares;

d. Damages arising from dilution, subordination of equity, concealed amendments, and loss of governance rights;

e. Consequential damages and all losses proximately caused by Defendants' misconduct.

**2. Declaratory Relief (Count III)**

Issue a declaratory judgment confirming:

a. Plaintiffs' perpetual 10% Colombia revenue-share rights and their enforceability;

b. The binding effect of all such rights on all successors, affiliates, merged entities, or acquiring entities, including Xeomics and any consolidated entity;

c. Plaintiffs' rights to the earned Common Shares, Series Seed liquidation preferences, and full equity protections;

d. The invalidity of any amendments, actions, or transactions taken in violation of the Agreements;

e. Defendants' obligation to deliver full corporate records and transaction documents.

**3. Injunctive Relief (Count IV)**

Grant preliminary and permanent injunctions restraining Defendants from:

a. Consummating any merger, consolidation, restructuring, dissolution, or asset transfer without written successor assumption of all obligations owed to Plaintiffs;

b. Issuing insider equity, modifying conversion rights, altering record dates, or making distributions that dilute or subordinate Plaintiffs' interests;

c. Withholding corporate, shareholder, capitalization, Series A, or transaction documents;

d. Executing any capitalization event or transaction, including the contemplated Xeomics/ABC Corp. merger or $65 million financing, without adequate notice to Plaintiffs and preservation of their contractual rights.

e. Require maintenance of the status quo during litigation to protect Plaintiffs' equity, liquidation preferences, governance rights, and revenue-based entitlements.

**4. Specific Performance (Count V)**

Order Defendants to specifically perform all non-monetary obligations under the Agreements, including:

a. Registration and delivery of Plaintiffs' Common Shares;

b. Production of a complete and accurate fully diluted cap table;

c. Production of all Series A subscription and conversion documentation;

d. Production of all board and shareholder resolutions, including those associated with the June 2023 and April 2024 amendments;

e. Production of all ABC Corp./Xeomics consolidation documents, including LOIs, merger drafts, waterfall analyses, and fairness opinions;

f. Production of all required revenue-share reports, reconciliations, and certifications.

**5. Accounting (Count VI)**

Order a full accounting of all financial information relevant to Plaintiffs' rights, including:

a. All Colombia-sourced revenue and underlying data assets;

b. All advances owed and unpaid;

c. All distributions, capital raises, note issuances, and merger proceeds;

d. All insider and outsider equity issuances (including the insider shares);

e. All financial or transaction records necessary to confirm Plaintiffs' contractual and equity rights.

**6. Restitution / Unjust Enrichment (Count VII — Alternative)**

In the alternative, award restitution, disgorgement, and any equitable relief necessary to prevent Defendants from unjustly retaining benefits derived from Plaintiffs' services, relationships, and data-asset development.

**7. Attorneys' Fees and Costs (Count VIII)**

Award Plaintiffs their reasonable attorneys' fees, expert fees, and litigation costs pursuant to the Agreements, applicable statutes, and the Court's equitable powers.

**8. Federal Securities Law Remedies (Count IX)**

Award all relief available under Section 10(b) and Rule 10b-5, including:

a. Damages;

b. Rescission or rescissionary damages;

c. Disgorgement;

d. Injunctive and equitable relief to remedy and prevent further securities fraud.

**9. Recognition of Mail/Wire Fraud Conduct (Count X)**

For jurisdictional and equitable purposes only, recognize Defendants' violations of 18 U.S.C. §§ 1341 and 1343 as supporting federal-question jurisdiction, injunctive relief, and equitable remedies.

**10. FLSA Relief (Count XI)**

Award Plaintiffs full relief under the FLSA, including:

39

a. Unpaid minimum wages and overtime compensation;

b. Liquidated damages equal to 100% of unpaid wages (29 U.S.C. § 216(b));

c. Pre-judgment interest where applicable;

d. Mandatory attorneys' fees and costs;

e. All additional relief available under 29 U.S.C. §§ 201–216.

## 11. Arbitration-Related Relief (Count XII)

Grant all relief authorized under the Federal Arbitration Act, including:

a. Provisional and emergency relief to preserve the integrity of arbitration proceedings;

b. Orders preventing mergers, consolidations, restructurings, and insider distributions that would frustrate arbitration;

c. Orders compelling Defendants to produce all records required to arbitrate the parties' disputes.

## 12. Enforcement of Forum-Selection and Governing-Law Clauses (Count XIII)

Issue orders confirming and enforcing:

a. New York law as the governing law of all disputes;

b. New York courts as the exclusive forum;

c. Continued binding effect of these provisions on all successors, affiliates, merged entities, assignees, or reorganized entities.

## 13. Pre- and Post-Judgment Interest (Count XIV)

Award:

a. Pre-judgment interest on all monetary awards at the maximum rate permitted by law;

b. Post-judgment interest under 28 U.S.C. § 1961.

## 14. Further Relief (Count XV)

Grant all further legal, equitable, declaratory, or ancillary relief the Court deems just and proper

to:

a. Protect Plaintiffs' contractual, equity, governance, and financial rights;

b. Prevent Defendants from evading obligations through restructuring, concealment, or

dissolution;

c. Ensure successor assumption in any corporate transaction;

d. Preserve assets, records, and transaction materials required to adjudicate Plaintiffs' claims.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal

Rules of Civil Procedure and the Seventh Amendment to the United States Constitution. All issues

sounding in equity, including requests for declaratory and injunctive relief, specific performance,

accounting, and other equitable remedies, are to be tried by the Court.


Dated: New York, New York
     March 31, 2026                     Respectfully submitted,

**GREENSPOON MARDER LLP**

*/s/ James A. Wolff*
James A. Wolff, Partner
1345 Avenue of the Americas, Suite 2200
New York, New York 10105
Direct Phone Number: 212.524.4978
Office Phone Number: 212.524.5000
Email: James.Wolff@gmlaw.com

*Counsel for Plaintiffs' Mico Titi LLC and
Holzer Family Office, LTD.*